IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re:<br><br>NEW SEABURY COMPANY<br>LIMITED PARTNERSHIP,<br><br>Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Chapter 11<br><br>Case No. 97-12964-JNF |
| JEROME HOFFMAN, JAMES EGAN,<br>CHARLES REIDY and<br>DONALD H. SIEGEL,<br><br>Plaintiffs,<br><br>v.<br><br>NEW SEABURY PROPERTIES, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Adversary Proceeding<br>No. |

**VERIFIED ADVERSARY COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF**

Creditors Jerome Hoffman, James Egan, Charles Reidy and Donald H. Siegel (the "Plaintiffs" or "Member Creditors") as and for their Verified Adversary Complaint against New Seabury Properties, LLC ("NSP") respectfully state as follows:

1.  The Plaintiffs are members of the Club at New Seabury (the "Club"), located in Mashpee, Massachusetts and are "Members," as defined in the Debtor's Fourth Amended Plan of Reorganization (the "Plan").[1]  They have instituted this adversary proceeding seeking (i) a declaration that NSP, the owner and operator of the Club and the successor to Debtor New

---

[1] The term "Members" was defined in the Debtor's Fourth Amended Plan of Reorganization as "any person who is a member in the New Seabury Country Club on the Effective Date [September 17, 1998]." See Plan, at ¶ 1.32.

{B2016337}

Seabury Company Limited Partnership (the "Debtor"), has violated the Member Creditors' rights under the Order Confirming Fourth Amended Plan of Reorganization of New Seabury Company Limited Partnership, dated June 15, 1998 (the "Confirmation Order"), (ii) an injunction directing NSP to comply with the Confirmation Order, and (iii) for damages.  In the meantime, as set forth in related filings, the Plaintiffs request an order staying NSP's implementation of its planned membership changes at least until ten days after the Court may rule on the Member Creditors' Motion to Reopen and request for related relief, including contempt sanctions.

## Parties

2. Plaintiff Jerome Hoffman is a member of the Club and is a Member.

3. Plaintiff James Egan is a member of the Club and is a Category 1 Member as referenced in the Confirmation Order.

4. Plaintiff Charles Reidy is a member of the Club and is a Category 1 Member as referenced in the Confirmation Order.

5. Plaintiff Donald H. Siegel is a member of the Club and is a Category 1 Member as referenced in the Confirmation Order.

6. Defendant NSP is the successor in interest to Debtor New Seabury Company Limited Partnership and currently owns and operates the Club.  The Confirmation Order is binding on NSP and its successors and assigns.  Confirmation Order ¶ 12(i).

## Jurisdiction and Venue

7. This is an adversary proceeding instituted pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure, and pursuant to the Court's Order of May 11, 2016, staying NSP's implementation of its planned membership changes.

8. This Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

9. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

Facts

10. On March 31, 1997, the Debtor filed a Voluntary Chapter 11 Petition in this Court. *See* Voluntary Chapter 11 Petition [ECF 1].

11. At the time of filing, the Debtor owned and operated the Club, located along Nantucket Sound on Cape Cod in Mashpee, Massachusetts.

12. The Official Committee of Unsecured Member Creditors (the "Official Committee") was appointed to represent the interests of the Members of the Club in the Debtor's bankruptcy case. [ECF 223].

13. The Member Creditors estimate that there are between 150 and 200 similarly situated Members who were members as of the Effective Date of the Debtor's Plan (September 17, 1998), and who remain members of the Club.

14. In the course of the Debtor's bankruptcy proceedings, the Official Committee negotiated with NSP for, and reached agreement on various matters affecting the members of the Club. These agreements were embodied, and given the force of an Order of this Court, in the Confirmation Order. *See* Confirmation Order ¶¶ 11-12.

15. On June 15, 1998, the Court signed the Confirmation Order approving the Plan. [ECF 387].

16. The Debtor's bankruptcy case was closed on July 10, 2008. [ECF 720].

17. The Confirmation Order provided that NSP assumed all Membership Agreements (as defined in the Plan) in the Club and imposed various obligations on NSP with respect to the rights of the Members of the Club. *S*ee Confirmation Order ¶¶ 11-12.

18. The Confirmation Order provided that NSP would limit golf memberships in the Club to no more than 690. *See* Confirmation Order ¶ 12(d)(ii).

19. The Confirmation Order also provided that NSP would "not form a 'preferred' or exclusive class of Members having rights which are superior to the rights of existing Category 1 members." *See* Confirmation Order ¶ 12(e).

20. The Confirmation Order also provided that "Members may have input on such items as capital improvements, increases in dues and initiation fees . . . New Seabury Country Club rules and policies and other matters directly affecting Members." *See* Confirmation Order ¶ 12(h).

21. The Confirmation Order also provided that ". . . Members are not subject to 'capital assessments', second round 'initiation fees' or similar payments over and above annual dues . . . ." *See* Confirmation Order ¶ 12(g).

22. The Confirmation Order also provided under the heading "Permanent Membership," that "NSP recognizes the one-time initiation fee previously paid or earned by the Members entitles them to the annual renewal of golfing, beach or tennis privileges, subject to the payment of annual dues . . . ." *See* Confirmation Order ¶ 12(a).

23. The Confirmation Order further recognizes the transferability of Membership, in stating that "NSP recognizes that persons who buy Members' homes have the immediate right to join the New Seabury Country Club, subject only to payment of the then applicable initiation fee

and compliance with any other requirements for new Members…." *See* Confirmation Order ¶ 12(b)

24. Post-bankruptcy, NSP assumed operation of the New Seabury Country Club, which is now known as "The Club at New Seabury."

25. New Seabury Club Members Associates, LLC was formed to represent the interests of all members of the Club. It is operated by a Board of Managers ("Board of Managers").

26. The Board of Managers holds regular monthly meetings from April through December each year, in addition to other extraordinary meetings. It is the Board of Managers' practice at each monthly meeting to hold a private session, followed by a session with the General Manager of the Club. The General Manager of the Club is Paul Kruzel. He attended every monthly Board meeting from May 2015 through December 2015. In not one of those meetings did Mr. Kruzel ever mention any contemplated changes to the membership structure or seek input from the Board with respect to the membership structure.

27. Historically it has been NSP's practice to have the General Manager meet with the Board of Managers in the Fall to discuss anticipated dues increases for the following year, bills for which have typically been issued in the following January. Over the past ten years, dues increases have ranged between three (3) and five (5) percent, except for one year in which dues increased by nine (9) percent. Mr. Kruzel did not discuss the anticipated dues increases with the Board in the Fall of 2015. And dues invoices did not issue in January of this year.

28. Mr. Kruzel sent a late night email to Darlene Furbush (the Chairperson of the Board of Managers) in or about the evening of March 11, 2016 for a one-on-one meeting with Mr. Kruzel on March 14, that he subsequently rescheduled for March 15. Mike Richardson (a

second Board of Managers member) attended that meeting with Ms. Furbush, and for 30 minutes, Mr. Kruzel broadly discussed some planned facility and capital improvements. He shared nothing about any new membership categories or any changes to the membership structure.

29.     Two days later, on or about March 17, 2016, NSP sent each Member a letter detailing a new membership structure for the year 2016. The new membership structure purports to replace the old membership categories with six new categories. The letters offered each Member the choice of retaining his membership category or switching into one of the new membership categories at a higher price.

30.     NSP also invited members to a meeting on March 26, 2016 (Saturday of Easter weekend) ostensibly to provide more information and answer questions about the new membership structure, knowing full well that a large portion of the Members would still be in Florida or other out of state locations.

31.     The Board of Managers thereafter formed the Members Rights Committee ("Committee"), to, among other things, protect the rights of Members. The Committee then met with Mr. Kruzel on two occasions, asking for an explanation and justification of this new membership category plan and requesting that the March 26, 2016 (Easter Saturday) members' meeting he had called be rescheduled to a later date when more members would be back from their winter lodgings, or at the least that NSP provide remote access for such members to listen to the meeting. Mr. Kruzel denied both requests.

32.     At the March 26 meeting, representatives of NSP were unable or unwilling to provide more information or answer Members' questions. NSP stated at the meeting that Members who did not convert to a new membership class would not have access to the Club's

new fitness and community center. Members were informed that final packets of information and election forms regarding the new membership structure would be mailed soon and that members would only have until April 30, 2016, to make their elections.

33. The March 17 letters also set forth the annual dues structure for each of the categories of membership. While the letters to each member were different, as a general rule, a member, including a Category 1 Member, who elects to stay in his current category and retain all rights as a Member under the Confirmation Order, will see his dues increase by 20-30%, whereas historically dues increases have been 3-5% per annum. An equivalent Member who opts into a new category will see his dues increase by 4%, while still enjoying greater benefits that he would enjoy if he were to retain his court validated Category 1 Membership rights.

34. Upon information and belief, the purpose of the new dues structure is to coerce members to switch from their current membership categories to one of the new membership categories, and to relinquish their rights under the Confirmation Order. However, in so doing, NSP has created new classes of members who have rights superior to the rights of the Category 1 Members, making the retention of existing rights subject to a penalty, in so far as the new Diamond members pay lesser dues than the original Category 1 Members.

35. Moreover, by nominally increasing the dues associated with the new membership categories and significantly raising dues to penalize those members who keep their current membership categories, NSP has devalued the rights of Category 1 Members and imposed a prohibited second round initiation fee or "similar payment" in the guise of a disparate and unwarranted increase in dues, and as a penalty for retaining existing rights under the Confirmation Order.

36. In addition to describing the new membership and dues structure, NSP's March 17, 2016 letter also stated unequivocally that "the Club is increasing the cap limit on the number of golf memberships to 900 from current cap limit of 690 . . . ."

37. NSP failed to consult with and obtain input from Members before announcing or implementing the above changes to membership dues and policies or with respect to ongoing capital improvements and other matters at the Club at New Seabury.

38. Furthermore, the manner and timing of the announcement of these changes, and their coercive nature, constitute bad faith and unfair dealing on the part of NSP with respect to all members in violation of the Confirmation Order.

39. On April 8, 2016, at the request of the Committee, the Member Creditors moved to reopen this bankruptcy proceeding and sought to hold NSP in contempt for violating the Confirmation Order.

40. In an undated and unsigned cover letter to the members which came along with copies of the Objection to the Motion to Reopen that NSP filed in Bankruptcy Court and its April 15, 2016 letter to the Board, NSP states that: "*On April 8, 2016, at the request of the Members Rights Committee, four members chose to pursue litigation against the Club by seeking to reopen the bankruptcy case and to hold New Seabury Properties, LLC in contempt of court.*" That letter goes on to state: "*...we do not believe this action reflects the overall view of the membership at large.*" Contrary to NSP's view, over 300 members have expressed their support of the Member Creditors' action, with hundreds of checks, emails and phone calls.

41. On or about April 22, 2016, NSP sent new membership packages to Club members. The offer letters contained therein set forth the new membership structure and dues increases and gave members until May 15, 2016 to elect a membership category. Most notably,

NSP has stated that it will abandon its plan to increase the number of golf memberships above 690, its most obvious (and egregious) violation of the Confirmation Order, but that concession is nowhere reflected in the new plan NSP has proposed.

42. The offer letter received by Mr. Siegel states that he has a "one-time limited opportunity" to switch into the new membership categories. However, under the Confirmation Order, as a Member he is entitled annually to renew "golfing, beach or tennis privileges, subject to the payment of annual dues . . . ." Confirmation Order ¶ 12(a). NSP historically has permitted Members to elect their membership category at the start of each year, subject to payment of annual dues. According to the offer letter, NSP is attempting to eliminate that right in violation of the Confirmation Order. NSP has told Members that if they accept NSP's offer and agree to a new category, they waive all rights under the Confirmation Order, which is inconsistent with paragraph 12(a) of the Confirmation Order.

43. With respect to the final membership packages, many Members have advised NSP that the terms are confusing, contradictory, and in many cases substantially different from the initial proposals NSP sent on March 17th. Some members have already made an election under protest, and tendered the unwarranted dues increases, reserving all rights. NSP has attempted to reject such elections and tenders. Certain other members have already resigned.

44. Notwithstanding the confusion NSP has caused, itself an unfair act, NSP refuses to relent in its wrongful effort to force Members into waiving their Court ordered and/or contractual rights, by putting an onerous price tag of excessive dues increases on those who would retain their rights. Similarly, with respect to post bankruptcy members, NSP has sought to eliminate certain rights they have under contract to a refund of some or all of their initiation fees. NSP has been clear that, by switching to a new membership category, members waive their pre-

existing rights under the Confirmation Order or otherwise under contract. NSP's obvious goal here is to move them into a higher, more expensive membership category, and to eliminate valuable rights of all members under the Confirmation Order and to refunds of their initiation fees under contract. NSP has refused to give clear answers (if any at all) to the legitimate written questions of various members, and in several instances, has failed to return phone calls or emails seeking clarification. NSP has categorically refused to answer certain other people's questions.

45. Upon information and belief, one member, Joseph Crowe, was told by NSP that his pre-bankruptcy membership is recallable, which is directly contrary to the "Permanent Membership" provision of the Confirmation Order (at ¶ 12(a)).

46. Upon information and belief, there have also been several instances where various members received the wrong membership packages, or none at all, including at least one of the Member Creditors, Mr. Siegel.

47. As it is, NSP would like the Court to believe that the Member Creditors represent just a tiny group of disgruntled New Seabury Members. The hundreds of members affected by and opposed to NSP's actions belie that claim.

48. On or about May 6, 2016, the Member Creditors filed a Reply to NSP's Objection to the Member Creditors' Motion to Reopen. The Member Creditors also sought interim relief in the form of an order directing NSP to refrain from implementing its planned changes, or otherwise be held in contempt, at least until such time as the Court may rule on the merits of the Member Creditors' Motion.

49. On or about May 10, 2016, the Member Creditors filed a Request for Emergency Determination of their Request for Interim Relief.

50. On or about May 11, 2016, the Court entered an order directing NSP to maintain the status quo on membership matters pending a hearing scheduled for May 27, 2016 and directing the Member Creditors to file this verified adversary complaint and request for temporary restraining order and/or preliminary injunction.

Demand for Relief

51. An actual controversy exists between NSP and the Member Creditors, entitling the Member Creditors to declaratory relief under 18 U.S.C. § 2201.

52. NSP is bound by the Confirmation Order, which provides the Member Creditors and all other members of New Seabury with certain protections.

53. NSP's changes to the membership structure and punitive dues increases violate the Confirmation Order, including, but not limited to, by:

> (a) creating a class of members, referred to as a "Diamond Membership," with rights superior to existing Category 1 Members in violation of paragraph 12(e) of the Confirmation Order;
>
> (b) failing to consult with Members and obtain their input before making capital improvements, increasing dues, changing the Club's rules and policies and other matters directly affecting Members in violation of paragraph 12(h) of the Confirmation Order;
>
> (c) raising the annual fees for current Category 1 members by 20-30%, while raising the fees for the new member categories by only 4% for superior benefits, and thereby diminishing the value of the Category 1 Members' rights and imposing a second round initiation fee in the guise of a 25-30% increase in dues in violation of paragraph 12(g) of the Confirmation Order; and

(d) eliminating Members' rights annually to renew "golfing, beach or tennis privileges, subject to the payment of annual dues" in violation of paragraph 12(a) of the Confirmation Order.

54. The Member Creditors, and all other members of the Club, have been and will continue to be injured by NSP's violations of the Confirmation Order.

55. Without an injunction staying NSP's implementation of its planned changes, all members, including the Member Creditors, will suffer damages, including irreparable injury for which they have no adequate remedy at law.

56. The balance of equities favors granting the Member Creditors injunctive relief.

57. The injunction would not disserve the public interest.

WHEREFORE, the Plaintiffs pray for entry of judgment as follows:

1. Declaring that NSP's new membership structure and annual dues increases, and the manner in which NSP is seeking to implement them, are in contempt of, and otherwise violate, the Confirmation Order;

2. Preliminarily and, after trial, permanently enjoining NSP from implementing its planned changes with respect to the membership structure and annual dues;

3. Ordering that NSP shall maintain the status quo on its membership matters until ten days after further order of the Court;

4. Awarding the Plaintiffs their damages suffered as a result of, *inter alia*, NSP's actions in contempt of this Court and its Confirmation Order, all in an amount to be proven at trial, together with their costs and attorneys' fees; and

5. For such other and further relief in favor of the Plaintiffs as is equitable and just.

Dated: Boston, Massachusetts
    May 13, 2016

        SULLIVAN & WORCESTER LLP

        By: /s/Patrick P. Dinardo
           Patrick P. Dinardo
           BBO No: 125250
           One Post Office Square
           Boston, MA 02109
           Tel: 617-338-2817
           Fax : 617-338-2880
           pdinardo@sandw.com

*Counsel for Member Creditors*
 *Jerome Hoffman, James Egan,*
 *Charles Reidy and Donald H. Siegel*

## VERIFICATION

I hereby state under oath that I have read the foregoing Verified Complaint and am familiar with the content thereof, and that the facts related thereto are true and complete to my knowledge, except those facts set forth on information and belief, and that as to those allegations, I believe them to be true.

Signed under the penalties of perjury this 13th day of May, 2016

_____
Donald H. Siegel

{B2016337}